**Affirmed and Memorandum Opinion filed July 13, 2023.**



In The

# Fourteenth Court of Appeals

## NO. 14-23-00119-CV

## IN THE INTEREST OF J.A.A.A., M.L.T. A/K/A M.T., J.H.M. JR., A/K/A J.N., CHILDREN

**On Appeal from the 314th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2019-01638J**

## MEMORANDUM OPINION

The trial court terminated both parents' parental rights to their three children, J.A. (Janie), M.T. (Mikey), and J.N. (James).[1] The trial court terminated the mother's parental rights on predicate grounds of endangering conduct and failure to comply with a family service plan. The court also found that termination was in the children's best interest and appointed the Department of Family and Protective Services (the Department) as the children's sole managing conservator. The

---

[1] Janie, Mikey, and James are pseudonyms, which we use to protect the minors in this case. *See* Tex. R. App. P. 9.8.

children's mother, O.L.N. (Mother), appealed the termination of her parental rights. The children's fathers did not appeal. On appeal, Mother challenges the legal and factual sufficiency of the evidence to support the predicate grounds, as well as the best interest finding, and the appointment of the Department as sole managing conservator. Because we conclude that legally and factually sufficient evidence supports the trial court's endangerment and best interest findings, and that appointment of the Department as managing conservator is a consequence of termination, we affirm the judgment.

## BACKGROUND

Janie, ten years old at the time of trial, was born in 2012. Mother had two more children, Mikey, born in 2017, and James born two years later in 2019.

On March 2, 2019, the Department received a referral alleging physical abuse of two-month-old infant James by an unknown perpetrator. On April 6, 2019, the Department received a second referral alleging neglectful supervision to six-year-old Janie, one-year-old Mikey, and the infant James. According to the report law enforcement responded to the family's residence three times in three days. One report noted that Mother left the children in the car each time she returned to the residence. It was reported that two days earlier, on April 4, 2019, the three children were in the car with Mother when Mother drove the car into the garage door at her girlfriend's home. Mother also tried to hit her girlfriend's brother with her car. Despite being in the car during these incidents, the children were not injured. One day later, on April 5, 2019, Mother returned to the girlfriend's home with the children in the car. Mother broke the windows of the home and "tore up her girlfriend's house."

On April 6, 2019, the day of the second referral, Mother returned to her girlfriend's house with the children and broke several windows with a hammer and

a brick. Mother also tried to assault her girlfriend's brother with a rock. Mother was arrested and asked that the police leave the children with her girlfriend because she did not have any family members with whom to leave the children.

On April 16, 2019, the three children were removed from Mother's care pursuant to an emergency order for protection that named the Department the children's temporary sole managing conservator. The Department's caseworker, Shayolonda Herron, submitted a removal affidavit and averred that the Department sought to remove all three children from Mother's care due to Mother's incarceration on the charge of aggravated assault with a deadly weapon.

The removal affidavit included Mother's criminal history, which showed convictions for unauthorized use of a vehicle in 2011, and assault of a family member in 2015. The affidavit also included Mother's CPS history. On December 12, 2017, Mother was investigated for using illegal drugs during pregnancy because she tested positive for marijuana when Mikey was born. The allegation was "ruled out for physical abuse" because Mikey tested negative at birth. On November 1, 2018, Mother was investigated because of an allegation that she hit six-year-old Janie with a ruler and caused a mark on her face. The allegation was ruled out because Janie did not have any marks or bruises and did not make an outcry of abuse or neglect. Mother also was investigated for using physical discipline on eleven-month-old Mikey when he cried too much.

The Department filed a petition to terminate the parental rights of Mother and the alleged fathers of the children. The trial on the Department's petition began briefly on January 12, 2021, then recessed to allow Mother more time to complete her services, and to conduct mediation. When trial eventually resumed on January 13, 2023, the trial court ordered termination of the alleged and unknown fathers of the children. Mother appeared at trial via Zoom. The following evidence was

3

presented at trial regarding termination of Mother's parental rights to Janie, Mikey, and James, the three children who are the subject of this suit.

Mother testified that her children were ages ten, five, and almost four at the time trial resumed. When describing the incident that led to the Department's intervention Mother explained that she "reacted" to a friend's "verbal altercation" and was arrested for aggravated assault. The children were taken into care because Mother was a single parent. Mother pleaded guilty to assault with a deadly weapon and received a suspended sentence with five years' probation. All three children were with Mother at the time of her arrest. Mikey, two years old at the time, was injured during the altercation.

After three months in jail, Mother was released and was given a family service plan. Mother's family service plan, which was admitted into evidence, reflected each child's strengths and needs in addition to Mother's strengths, needs, and actions to address. The service plan reflected the Department's concerns about Mother's incarceration after damaging the windows of her girlfriend's home and attempting to run over her girlfriend's brother with the children in the car. The Department also expressed concern that Mother was unable to properly supervise her children due to untreated depression and bipolar disorder. The Department expressed concern that when Mother got angry, she was unable to control her actions and was unable to appropriately supervise the children. This was of particular concern because the children were too young to protect themselves.

The service plan expressed Mother's goals as requiring her to work with a safety network of family, friends, and providers to create a plan to ensure that the children would always be cared for by a safe, nurturing, and stable caregiver. Mother was instructed to learn better coping skills as well as better judgment skills to avoid putting her children at risk of further trauma associated with Mother engaging in

4

criminal activity in the presence of her children. Mother was also instructed to manage her mental health with the help of recommendations from clinical CPS providers to lessen the possibility of her engaging in criminal activity that would adversely affect the children.

Mother completed substance abuse therapy in 2021 but admitted testing positive for marijuana in September 2022. Mother completed an anger management class in 2020, and also attended individual counseling. Mother said she had been diagnosed with depression and anxiety and took medications to address those issues. Mother was employed with a travel agency and attended bi-weekly visits with her children.

Mikey, five years old, has behavioral problems, described as spitting and kicking Mother and hitting Janie in the face. Mikey has also thrown chairs and other things during visits with Mother.

Mother testified that when the children came into the Department's care, she was not seeing a psychiatrist and was not taking medication because she did not "feel like [she] need[ed] them." Mother was diagnosed with mental health issues when she was younger and took medications for a brief time. Mother denied having mental health issues and testified she did not like taking medicine. Mother was seeing a psychiatrist at the Harris Center every six weeks and taking medication at the time of trial to obtain the return of her children.

David Lee, the Department caseworker, testified that he was concerned about returning the children to Mother because she had not consistently cared for her mental health. Mother only sought assistance with her mental health prior to going to court. Mother did not consistently comply with drug testing during the pendency of the case. For example, Mother was asked to submit to drug testing 51 times but only reported for testing 19 times, five of which she tested positive. Mother had four

positive tests for marijuana and one positive test for cocaine. The Department provided substance abuse assistance in the form of individual and group therapy, which Mother completed. Since completing substance abuse therapy Mother tested positive for marijuana and cocaine. Mother's continued positive drug tests were concerning because they indicated Mother was continuing to act in a way that was harmful to the children.

As to Mother's mental health, she was diagnosed with bipolar depression and anxiety. Mother's family service plan expected her to maintain her mental health through use of therapy and medication. Mother had not provided proof to the Department of complying with the plan of maintaining her mental health. Mother testified that she continued to use illegal drugs because "it was helping me with my anxiety and my depression."

Mother also demonstrated an inability to control her children during supervised visits with them. As an example, Lee testified that during one visit Mikey spit on Mother. Mother reacted by degrading Mikey and talking down to him. When Lee asked Mother to be more comforting and encouraging with Mikey, Mother stopped engaging with the children at all. At another visit, Mother told the children, "I can see why these foster parents don't want y'all because y'all just — y'all just acting out." At another visit Mother lost control of the visit when Mikey expressed displeasure about a gift she brought. Lee had to intervene and end the visit early. Lee was able to help Mikey calm down after the visit ended. While at one visit Mother was on the phone with another relative and seemed to pay more attention to her phone call than her children. Lee described this behavior as a pattern for Mother.

Lee further expressed concern that Mother put the children's lives in danger when she was arrested for violent behavior. The children were present during the violent incident and were put in harm's way.

By the time of trial, the children had been in seven foster placements. The children were originally placed together in a foster home. The children were moved from that home because the foster parents were unable to keep all three children. At that time Janie was placed with her aunt (Aunt B.) and the two boys were placed in a foster home. After 30 days the boys were moved because the foster home could no longer meet their needs. Janie stayed with Aunt B. for approximately one year. Janie left Aunt B.'s home because Aunt B. decided she did not want to take the steps necessary to get licensed as a foster parent. All three children were then moved to a potential foster-to-adopt home where they stayed approximately four months. The boys fared well in that foster home until Janie alleged that the foster mother was hitting the boys. The Department investigated Janie's allegations and determined there was no evidence of physical abuse. The children were moved to another placement where Janie made similar allegations, which were also ruled out due to lack of evidence. Lee testified that Janie made the unfounded allegations because she wanted to be with Mother. Each of the allegations occurred shortly after Janie's visits with Mother.

At the time of trial, the children were in a foster-to-adopt placement, which seemed to be working well. Janie had her own room and was adjusting well. The boys were in a room together, which they enjoyed.

Lee testified that Mother had not demonstrated that she could provide a safe and stable environment for her children. Mother had not completed her service plan because she did not provide a lease agreement for housing, had not obtained a Narcotics Anonymous sponsor, and was not taking steps to maintain her mental health. Moreover, Mother did not comply with requests for random drug testing. Mother's drug use coupled with her resistance to mental health care were detrimental to Mother's establishment of a relationship with her children. Mother refused to talk

with Lee, the caseworker. Lee observed Mother with all three children and testified that she had a bond with Janie. Mother, however, had not been able to demonstrate an ability to parent the boys.

In contrast, all three children were stable in the foster-to-adopt home. The children's physical and emotional needs were met by the foster parents. Lee did not believe it was in the children's best interest to be returned to Mother.

After the Department rested, Aunt B. testified on Mother's behalf. Aunt B. testified that Janie lived with her when the children first came into care in 2019. Aunt B. wanted to keep Janie but did not want to take the classes required by the Department to be considered an adoptive parent.

Kamma Mangram, the Department supervisor, testified that Mother's positive drug tests while on probation for assault subjected her to the possibility of incarceration. Mangram further testified that Janie was making false accusations against foster parents "because of Mom." Mother's behavior "had a devastating impact" on Janie's placement. According to documentation from the Harris Center Mother had not successfully completed services to treat her mental health. The Harris Center discharged Mother twice for noncompliance, requiring Mother to restart services. Mangram testified that Mother's behavior had not improved during the pendency of the case.

After all sides rested and gave closing arguments, the trial court found clear and convincing evidence that Mother engaged in conduct that endangered the children's physical or emotional well-being and that Mother did not comply with the provisions of a court-ordered service plan. *See* Tex. Fam. Code § 161.001(b)(1)(E), (O). The court further found that terminating Mother's parental rights was in the children's best interest and appointed the Department permanent managing conservator. *See* Tex. Fam. Code §§ 161.001(b)(2), 161.207(a). Based on those

findings, the trial court signed a final order terminating Mother's parental rights. Mother timely appealed.

ANALYSIS

Mother presents four issues for review. In her first two issues, she challenges the legal and factual sufficiency of the evidence to support the predicate grounds for termination—endangerment and failure to comply with the court-ordered service plan. In her third issue Mother asserts that the evidence is legally and factually insufficient to support the best interest finding. Finally, in her fourth issue, Mother asserts the trial court abused its discretion by appointing the Department sole managing conservator.

## I.     Standards of Review

In a proceeding to terminate the parent-child relationship under Family Code section 161.001, the petitioner must establish by clear and convincing evidence one or more acts or omissions enumerated under subsection (1) of section 161.001(b) and that termination is in the best interest of the children under subsection (2). *See* Tex. Fam. Code § 161.001; *In re N.G.*, 577 S.W.3d 230, 232 (Tex. 2019); *In re J.L.*, 163 S.W.3d 79, 84 (Tex. 2005). Involuntary termination of parental rights is a serious matter implicating fundamental constitutional rights. *See In re of J.F.-G.*, 627 S.W.3d 304, 310 (Tex. 2021); *In re D.R.A.*, 374 S.W.3d 528, 531 (Tex. App.— Houston [14th Dist.] 2012, no pet.). Although parental rights are of constitutional magnitude, they are not absolute. *See In re A.C.*, 560 S.W.3d 624, 629 (Tex. 2018); *In re C.H.*, 89 S.W.3d 17, 26 (Tex. 2002).

Due to the severity and permanency of terminating the parental relationship, Texas requires clear and convincing evidence to support such an order. *See* Tex. Fam. Code § 161.001; *In re J.F.-G.*, 627 S.W.3d at 310; *In re J.F.C.*, 96 S.W.3d 256,

9

265–66 (Tex. 2002). "Clear and convincing evidence" means "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." Tex. Fam. Code § 101.007; *In re J.F.C.*, 96 S.W.3d at 264. This heightened burden of proof results in a "correspondingly searching standard of appellate review." *In re A.C.*, 560 S.W.3d at 630.

In reviewing the legal sufficiency of the evidence in a parental termination case, we must consider all evidence in the light most favorable to the challenged finding to determine whether a reasonable fact finder could have formed a firm belief or conviction that the finding was true. *See In re J.O.A.*, 283 S.W.3d 336, 344 (Tex. 2009). We assume that the fact finder resolved disputed facts in favor of the finding if a reasonable fact finder could do so, and we disregard all evidence that a reasonable fact finder could have disbelieved. *See id.*; *In re G.M.G.*, 444 S.W.3d 46, 52 (Tex. App.—Houston [14th Dist.] 2014, no pet.). Because of the heightened standard, we also must be mindful of any undisputed evidence contrary to the finding and consider that evidence in our analysis. *In re D.R.A.*, 374 S.W.3d at 531.

In reviewing the factual sufficiency of the evidence under the clear-and-convincing standard, we consider and weigh disputed evidence contrary to the finding against all the evidence favoring the finding. *In re A.C.*, 560 S.W.3d at 631; *In re J.O.A.*, 283 S.W.3d at 345. If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient. *In re J.O.A.*, 283 S.W.3d at 345. We give due deference to the fact finder's findings, and we cannot substitute our own judgment for that of the fact finder. *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006).

10

**II.** **Legally and factually sufficient evidence supports the trial court's finding of endangerment.**

In her first issue Mother argues the evidence is legally and factually insufficient to support termination under section 161.001(b)(1)(E).

To affirm a termination judgment on appeal, a court need uphold only one termination ground—in addition to upholding a challenged best interest finding—even if the trial court based the termination on more than one ground. *In re N.G.*, 577 S.W.3d at 232; *In re L.M.*, 572 S.W.3d 823, 832 (Tex. App.—Houston [14th Dist.] 2019, no pet.). Further, due to the significant collateral consequences of terminating parental rights under section 161.001(b)(1)(D) or (E), "[a]llowing section 161.001(b)(1)(D) or (E) findings to go unreviewed on appeal when the parent has presented the issue to the court thus violates the parent's due process and due course of law rights." *In re N.G.*, 577 S.W.3d at 237. Thus, when as here a parent challenges predicate termination grounds under subsection 161.001(b)(1)(E), we must address and detail our analysis under that subsection. *See id*.

Termination of parental rights is warranted if the fact finder finds by clear and convincing evidence, in addition to the best interest finding, that the parent has "engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child." Tex. Fam. Code § 161.001(b)(1)(E). "To endanger" means to expose a child to loss or injury or to jeopardize a child's emotional or physical health. *See In re M.C.*, 917 S.W.2d 268, 269 (Tex. 1996). A finding of endangerment under subsection (E) requires evidence that the endangerment was the result of the parent's conduct, including acts, omissions, or failures to act. *In re S.R.*, 452 S.W.3d 351, 361 (Tex. App.—Houston [14th Dist.] 2014, pet. denied). Termination under subsection (E) must be based on more than a single act or omission; the statute requires a voluntary,

deliberate, and conscious course of conduct by the parent. *Id*. Relevant evidence in determining whether a parent engaged in a course of endangering conduct includes conduct that occurred before and after the child's birth, in the child's presence and outside the child's presence, and before and after removal by the Department. *See In re J.O.A.*, 283 S.W.3d at 345.

While endangerment often involves physical endangerment, the statute does not require that conduct be directed at a child or that the child actually suffer injury; rather, the specific danger to the child's well-being may be inferred from the parent's misconduct alone. *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987). A parent's conduct that subjects a child to a life of uncertainty and instability endangers the child's physical and emotional well-being. *In re F.E.N.*, 542 S.W.3d 752, 764 (Tex. App.—Houston [14th Dist.] 2018, no pet.). Evidence of criminal conduct, convictions, imprisonment, and their effects on a parent's life and ability to parent, may establish an endangering course of conduct. *See In re S.M.*, 389 S.W.3d 483, 492 (Tex. App.—El Paso 2012, no pet.); *In re V.V.*, 349 S.W.3d 548, 554 (Tex. App.—Houston [1st Dist.] 2010, pet. denied). Routinely subjecting children to the probability that they will be left alone because their parent is in jail endangers those children's physical and emotional well-being. *See Walker v. Tex. Dep't of Fam. & Protective Servs.*, 312 S.W.3d 608, 617 (Tex. App.—Houston [1st Dist.] 2009, pet. denied).

The record contains clear and convincing evidence that Mother endangered the children by engaging in an aggravated assault in the children's presence and continuing to engage in endangering activity. Mother admitted one of the children was injured during the assault. Mother continued to regularly engage in criminal activity, namely the abuse of illegal drugs. The record reflects that Mother appeared only 19 times out of 51 in which she was requested to submit to drug testing. Out of

the 19 times that Mother appeared, she tested positive for marijuana four times and cocaine once. The trial court was entitled to consider the remaining 32 times that Mother failed to appear as positive drug tests. Mother continued to use illegal drugs after the children were removed, after receiving individual and group therapy for substance abuse, and throughout the pendency of this case. While the case was pending Mother was on probation for the assault conviction and Mother acknowledged at trial that illegal drug use was a violation of the conditions of her probation. Thus, Mother subjected the children to a life of uncertainty and instability because Mother could be jailed for drug-related offenses and/or violation of the conditions of probation. *See In re S.W.W.*, No. 14-22-00503-CV, 2022 WL 17982904, at *9 (Tex. App.—Houston [14th Dist.] Dec. 29, 2022, pet. denied) (mem. op.).

A parent's drug abuse may be an endangering course of conduct under subsection (E) because it can negatively impact the parent's ability to parent in multiple ways, not only by exposing the child to the possibility that the parent may be imprisoned, but also because drugs can physically impair the capacity to parent. *In re J.B.*, No. 14-20-00766-CV, 2021 WL 1683942, at *5 (Tex. App.—Houston [14th Dist.] Apr. 29, 2021, pet. denied) (mem. op.); *Walker*, 312 S.W.3d at 617. We have held that there must be a causal connection between a parent's drug use and any alleged endangerment. *In re L.C.L.*, 599 S.W.3d 79, 84 (Tex. App.—Houston [14th Dist.] 2020, pet. denied) (en banc).

In the *L.C.L.* case, the sole basis for termination was that the mother "tested positive for drugs both initially and throughout the proceedings." *Id*. Here, the record reflects more evidence of endangerment aside from positive tests for drug use. When the children came into care it was because Mother engaged in violent criminal conduct that resulted in one of the children being injured. Mother was diagnosed

with bipolar depression and anxiety, but rather than take prescribed medication she self-medicated with marijuana and cocaine. Moreover, Mother did not appear for 32 court-ordered drug tests. We have held that "a fact finder reasonably can infer that a parent's failure to submit to court-ordered drug tests indicates the parent is avoiding testing because they were using illegal drugs." *In re E.R.W.*, 528 S.W.3d 251, 265 (Tex. App.—Houston [14th Dist.] 2017, no pet.).

The record further reflects that Mother was convicted of unauthorized use of a motor vehicle in 2011 and placed on deferred adjudication probation. On July 19, 2012, two months before Janie was born, Mother's guilt was adjudicated, and she was sentenced to seven months in jail. Therefore, Mother violated the terms of her community supervision in that case while pregnant with Janie, subjecting the child to the risk that she would be without her mother as a newborn. *See In re M.T.*, No. 14-22-00198-CV, 2022 WL 3204819, at *7 (Tex. App.—Houston [14th Dist.] Aug. 9, 2022, no pet.) (mem. op.) ("Evidence of criminal conduct, convictions, imprisonment, and their effects on a parent's life and ability to parent may establish an endangering course of conduct."). Then, in March of 2015, when Janie was two years old, Mother committed another offense and was convicted of assault of a family member and sentenced to 45 days in jail, again engaging in conduct that subjected Janie to her mother's absence and inability to parent.

This evidence, considered altogether, would support a finding that Mother had a history of criminal behavior, drug use, and unstable living conditions that endangered the children and would continue to engage in such behavior. We conclude that under these circumstances, the fact finder could have formed a firm belief or conviction that its endangerment finding under subsection (E) was true. *See In re J.B.*, 2021 WL 1683942, at *6; *In re J.O.A.*, 283 S.W.3d at 344. Considered in the light most favorable to the trial court's finding, the evidence is legally sufficient

14

to support the trial court's determination that termination of Mother's parental rights was justified under section 161.001(b)(1)(E). Further, in view of the entire record, we conclude the evidence to the contrary is not so significant as to prevent the trial court from forming a firm belief or conviction that termination was warranted under section 161.001(b)(1)(E). Accordingly, we conclude the evidence is legally and factually sufficient to support the subsection (E) finding.

Having concluded the evidence is legally and factually sufficient to support the trial court's finding under subsection (E), we need not review the sufficiency of the evidence to support the subsection (O) finding. *See In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003). We overrule Mother's first and second issues on appeal and turn to the trial court's best interest finding.

## III. Legally and factually sufficient evidence supports the trial court's finding that termination of Mother's parental rights was in the children's best interest.

The best interest inquiry is child-centered and focuses on the children's well-being, safety, and development. *In re A.C.*, 560 S.W.3d at 631. The trier of fact may consider several factors to determine the children's best interest, including: (1) the desires of the children; (2) the present and future physical and emotional needs of the children; (3) the present and future emotional and physical danger to the children; (4) the parental abilities of the persons seeking custody; (5) the programs available to assist those persons seeking custody in promoting the best interest of the children; (6) the plans for the children by the individuals or agency seeking custody; (7) the stability of the home or proposed placement; (8) acts or omissions of the parent that may indicate the existing parent-child relationship is not appropriate; and (9) any excuse for the parents' acts or omissions. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976); *In re E.R.W.*, 528 S.W.3d 251, 266 (Tex. App.—Houston [14th Dist.] 2017, no pet.); *see also* Tex. Fam. Code § 263.307(b) (listing factors to

consider in evaluating parents' willingness and ability to provide the child with a safe environment).

Courts apply a strong presumption that the best interest of the children is served by keeping the children with their natural parents, and it is the Department's burden to rebut that presumption. *In re D.R.A.*, 374 S.W.3d at 531. Prompt and permanent placement in a safe environment also is presumed to be in the children's best interest. Tex. Fam. Code § 263.307(a). A finding in support of "best interest" does not require proof of any unique set of factors, nor does it limit proof to any specific factors. *See Holley*, 544 S.W.2d at 371–72. Evidence that proves one or more statutory grounds for termination may also constitute evidence illustrating that termination is in the children's best interest. *In re C.H.*, 89 S.W.3d at 28. And a fact finder may measure a parent's future conduct by her past conduct in determining whether termination of parental rights is in the children's best interest. *In re L.G.*, No. 14-22-00335-CV, 2022 WL 11572541, at *11 (Tex. App.—Houston [14th Dist.] Oct. 20, 2022, no pet.) (mem. op.). We review the *Holley* factors in light of the evidence at trial.

### A.    The desires of the children

Mikey and James were too young to express their desires at the time of trial. When children are too young to express their desires, the fact finder may consider that the children have bonded with the foster family, are well-cared for by them, and have spent minimal time with a parent. *In re J.D.*, 436 S.W.3d 105, 118 (Tex. App.—Houston [14th Dist.] 2014, no pet.). In this case, the record reflects that the children were well-cared for by the foster family. The boys shared a room and Janie had her own room. The boys had a game room and enjoyed watching movies and playing with the family dog. Mikey was receiving therapy and the foster family, which was willing to adopt the children, planned to continue therapy. The children were

16

removed from Mother when James was an infant and Mikey was under two years old. Therefore, neither of the boys have spent significant time with Mother.

The record further reflects that ten-year-old Janie wanted to stay with Mother. There was evidence, however, that Mother manipulated Janie into making false allegations against foster parents to thwart the Department's efforts at finding a stable placement for the children. When considering Janie's desires, the fact finder was entitled to take into account Mother's instability and potential for violence or further incarceration. While a child's love for her parent is a very important consideration in determining the best interest of the child, it cannot override or outweigh evidence of danger to the child. *See In re L.S.S.*, No. 14-22-00822-CV, 2023 WL 2707210, at *8 (Tex. App.—Houston [14th Dist.] Mar. 30, 2023, pet. denied) (mem. op.); *In re F.M.E.A.F.*, 572 S.W.3d 716, 732 (Tex. App.—Houston [14th Dist.] 2019, pet. denied).

**B.    The present and future physical and emotional needs of the child; the present and future physical and emotional danger to the child**

Mother concedes that analysis of these two factors favors termination.

**C.    Parental abilities of the individuals seeking custody; programs available to assist those individuals seeking custody to promote the best interest of the child; plans for the child by the parties seeking custody; stability of the home or proposed placement; acts or omissions that indicate the parent-child relationship is not appropriate**

These related factors compare the Department's plans and proposed placement of the children with the plans and home of the parent seeking to avoid termination of the parent-child relationship. *See In re D.R.A.*, 374 S.W.3d at 535.

Mother testified that she was working through the Harris Center to address her mental health issues and complete her services, but admitted she had not

17

"engaged in services to the point where she can expect her children to be returned to her." Mother also admitted she had not expressed a willingness to parent all three children. The record reflects that Mother had a one-bedroom apartment, and was unable to care for all three children without a support system.

Conversely, at the time of trial, the children had been in a foster-to-adopt home for six weeks and appeared happy and well-adjusted. The foster parents have sufficient room to give Janie her own room and the boys ample room to play. While the children had unfortunately experienced several foster homes, there was evidence that Mother fueled the instability, especially in her interactions with Janie.

### D. Parent's acts or omissions that may indicate that the existing parent-child relationship is an improper one and any excuses for the parent's acts or omissions

In addressing this factor Mother admits she has not maintained stability in her struggles with mental illness and she placed her children in danger when engaging in an altercation with her girlfriend. While Mother argues her bond with Janie is unquestioned, she admits in her brief that the record is unclear whether she has a bond with the boys or is willing to be a parent to them.

There was evidence that Mother failed to address her mental health issues with legal drugs because she did not feel she needed them. Conversely, Mother admitted self-medicating with illegal drugs to alleviate depression and anxiety.

The trial court was entitled to consider Mother's criminal history, including incarceration, to support the finding that termination was in the children's best interest as an act indicating the existing parent-child relationship is not appropriate. *See e.g., In re S.N.*, 287 S.W.3d 183, 193 (Tex. App.—Houston [14th Dist.] 2009, no pet.) (considering parent's incarceration for a suspended driver's license at the time his children were removed and later 18-day incarceration for outstanding traffic

violations as acts or omissions relevant to best interest analysis).

Balancing the above factors and viewing the evidence in the light most favorable to Mother, we conclude that the evidence is legally sufficient to support the trial court's finding that termination is in the best interest of the children. Further, in view of the entire record, we conclude the evidence to the contrary is not so significant as to prevent the trial court from forming a firm belief or conviction that termination was in the best interest of the children. Accordingly, we conclude the evidence is legally and factually sufficient to support the trial court's finding of best interest. We overrule Mother's third issue.

## IV. The trial court did not abuse its discretion in appointing the Department as managing conservator of the children.

In Mother's fourth issue she challenges the trial court's appointment of the Department as sole managing conservator of the children. We review a trial court's appointment of a non-parent as sole managing conservator for abuse of discretion and reverse only if we determine the appointment is arbitrary or unreasonable. *In re J.A.J.*, 243 S.W.3d 611, 616 (Tex. 2007).

A parent shall be named a child's managing conservator unless, as relevant here, the court finds that such appointment would significantly impair the child's physical health or emotional development. *See* Tex. Fam. Code § 153.131(a). Although the trial court made this finding, when the parents' rights are terminated, as here, section 161.207 controls the appointment of a managing conservator. *In re I.L.G.*, 531 S.W.3d 346, 357 (Tex. App.—Houston [14th Dist.] 2017, pet. denied). Section 161.207 states, "If the court terminates the parent-child relationship with respect to both parents or to the only living parent, the court shall appoint a suitable, competent adult, the Department of Family and Protective Services, or a licensed child-placing agency as managing conservator of the child." Tex. Fam. Code §

161.207(a). Having terminated both parents' rights, the trial court was required to appoint the Department or another permissible adult or agency as the children's managing conservator. *See In re I.L.G.*, 531 S.W.3d at 357. The appointment may be considered a "consequence of the termination." *Id*.

We have concluded the evidence supporting termination of Mother's parental rights was legally and factually sufficient under section 161.001(b). Accordingly, section 161.207 controls. We therefore conclude the trial court did not abuse its discretion in appointing the Department as sole managing conservator of the children. *See In re I.L.G.*, 531 S.W.3d at 357. We overrule Mother's fourth issue.

## CONCLUSION

Having overruled Mother's issues on appeal we affirm the trial court's final order of termination.


/s/     Jerry Zimmerer
          Justice


Panel consists of Chief Justice Christopher and Justices Zimmerer and Poissant.

20